UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JANET S. DENMAN,<br><br>                              Plaintiff,<br><br>        v.<br><br>NANCY A. BERRYHILL,<br><br>                              Defendant. | Case No. 2:16-cv-00104-PAL<br><br>**ORDER**<br><br>(Mot. to Remand – ECF No. 24)<br>(Cross-Mot. to Affirm – ECF No. 25) |

This matter involves Plaintiff Janet S. Denman's appeal and request for judicial review of the Acting Commissioner of Social Security's final decision denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33.[1] This case is referred for a determination and entry of final judgment pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. *See* Reference Order (ECF No. 26).

## BACKGROUND

On January 24, 2012, Janet Denman protectively filed an application for a period of disability and disability insurance benefits. AR 200–01. She appeared at an administrative hearing with counsel, Virginius Dabney, on April 30, 2014. AR 57–85. The ALJ, David Gatto, issued a decision on June 21, 2014, determining that Denman was not disabled. AR 27–57. She requested review of the ALJ's decision by the Appeals Council. AR 26. The Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-6. Denman therefore filed a complaint seeking judicial review pursuant to 42 U.S.C. § 405(g).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to the Federal Rules of Civil Procedure and the Social Security Act, the court therefore substitutes Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit. *See* Fed. R. Civ. P. 25(d) (allowing the automatic substitution of a successor to a public officer who is a party to an action but ceases to hold office while the action is pending); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Currently before the court is Denman's Motion for Reversal and/or Remand (ECF No. 24), and the Commissioner's Cross-Motion to Affirm (ECF No. 25). Denman did not file a reply and the time for filing a reply has expired. Denman's sole claim on appeal is that the ALJ committed reversible error by failing to properly consider her testimony. For the reasons explained below, the court denies the Motion and grants the Commissioner's Cross-Motion. The ALJ's finding that Denman has not been under a disability as defined in the Social Security Act from December 1, 2011, through the date of the April 3, 2014 decision is supported by substantial evidence.

## DISCUSSION

### I. APPLICABLE LAW

#### A. Judicial Review of Disability Determinations

Federal district courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g). However, judicial "review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). After an ALJ has held a hearing and the decision is final, § 405(g) allows a disability claimant to seek judicial review of an adverse decision by filing a lawsuit in a federal district court within the district where the claimant lives. The statute authorizes the court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The ALJ's findings of fact are conclusive if they are supported by "substantial evidence." 42 U.S.C. § 405(g). The court may reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). To determine whether the ALJ's findings are supported by substantial evidence, a court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014).

"For highly fact-intensive individualized determinations like a claimant's entitlement to

disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency'." *Treichler*, 775 F.3d at 1098 (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Thus, courts must "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (citing 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The ALJ's findings must be upheld if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo*, 871 F.3d at 674–75 (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)).

The court may only review the reasons the ALJ provided in the disability decision and "may not affirm the ALJ on a ground upon which he did not rely." *Id.* at 675 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)). Thus, an ALJ's findings should be stated with enough specificity so that a court does not speculate as to the basis of the findings when determining if the findings are supported by substantial evidence. *See Burrell v. Colvin*, 775 F.3d 1133, 1140–41 (9th Cir. 2014). Cursory findings of fact lacking explicit statements about what portions of evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). An ALJ's findings should be comprehensive, analytical, and include a statement explaining the "factual foundations on which the ultimate factual conclusions are based." *Id.*; *see also Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (an ALJ need not "discuss every piece of evidence" but must explain why significant or probative evidence was rejected).

## B. Disability Evaluation Process

A five-step sequential evaluation process is used to determine whether a claimant is disabled and eligible for benefits:

> First, the agency must consider the claimant's current work activity. Second, the agency must consider the medical severity of the claimant's impairments. Third, the agency must determine whether the severity of those impairments is sufficient to meet, or medically equal, the criteria of an impairment listed in three of the Social Security Act's implementing regulations, published at 20 C.F.R. §§ 404.1520(d), 404.1525–26. Fourth, the agency determines whether the claimant can perform past relevant work in light of the claimant's residual functional capacity. Fifth, the

agency assesses whether the claimant can make an adjustment to other work that exists in significant numbers in the national economy, based on the claimant's residual functional capacity.

*Shaibi*, 883 F.3d at 1106 (citing 20 C.F.R. § 404.1520(a)).  " 'The claimant carries the initial burden of proving a disability in steps one through four'." *Id*. (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  If the claimant establishes an inability to continue his or her past work with specific medical evidence, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work. *Shaibi*, 883 F.3d at 1106.

## II.    THE ALJ'S DECISION

An ALJ is required to follow the five-step process to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an ALJ makes a finding of disability or non-disability at any step, no further evaluation is required.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  The ALJ followed the five-step process and issued an unfavorable decision on June 21, 2014.  AR 30–56.

### A.  Step One

The first step of the disability evaluation requires an ALJ to determine whether the claimant is currently engaging in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(b), 416.920(b).  SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit.  20 C.F.R. §§ 404.1572(a)–(b), 416.972(a)–(b).  If the claimant is currently engaging in SGA, then a finding of not disabled is made.  If the claimant is not engaging in SGA, then the analysis proceeds to the second step.

At step one in the Decision, the ALJ found that Ms. Denman had not engaged in SGA since December 1, 2011, the alleged onset date.  AR 32.

### B.  Step Two

The second step of the disability evaluation addresses whether a claimant has a medically-determinable impairment that is severe or a combination of impairments that significantly limits

4

him or her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling ("SSR") 85-28, 1985 WL 56856 (Jan. 1, 1985), SSR 96-3p, 61 Fed. Reg. 34468 (July 2, 1996); SSR 96-4p, 61 Fed. Reg. 34488 (July 2, 1996).[2] If a claimant does not have a severe medically-determinable impairment or combination of impairments, then an ALJ will make a finding that a claimant is not disabled. If claimant has a severe medically-determinable impairment or combination of impairments, then an ALJ's analysis proceeds to the third step.

At step two in the Decision, the ALJ found that Ms. Denman had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; a history of bilateral tinnitus; and fibromyalgia. AR 32–33. The ALJ found that these impairments more than minimally affected Denman's ability to perform basic work activities and were therefore considered "severe" for Social Security purposes. He considered all other impairments she alleged including depression, anxiety, history of migraines, chronic pain syndrome, and a history of diffused joint pain primarily of the elbows and knees as "non-severe" because he found they did not cause significant limitation in Denman's ability to perform basic work activities. Specifically, he found that the record did not document any significant limitations associated with them and that there was no record of an adverse brain scan or treatment with a neurologist with respect to migraines. *Id.* An overall review of the medical record revealed that these conditions were adequately controlled with medication when Denman remained compliant with the medication regimen. *Id.* Although Denman reported a history of "lupus," he found this was not a medically determinable impairment supported by the record because all testing and laboratory findings with respect to this condition were negative. *Id.* The ALJ found that Denman's alleged anxiety and depression did not cause more than minimal limitations in her ability to perform basic mental work

---

[2] SSRs are the Social Security Administration's official interpretations of the Act and its regulations. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); 20 C.F.R. § 402.35(b)(1). "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray*, 554 F.3d at 1224. SSRs are entitled to some deference as long as they are consistent with the Act and related regulations. *Id*. at 1223.

activities and are therefore "non-severe". *Id*.

**C. Step Three**

Step three of the disability evaluation requires an ALJ to determine whether a claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is commonly referred to as the "Listings." 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.826. If a claimant's impairment or combination of impairments meet or equal the criteria of the Listings and meet the duration requirement, 20 C.F.R. §§ 404.1509, 416.909, then an ALJ makes a finding of disability. 20 C.F.R. §§ 404.1520(h), 416.920(h). If a claimant's impairment or combination of impairments does not meet or equal the criteria of the Listings or meet the duration requirement, then the analysis proceeds to the next step.

At step three in the Decision, the ALJ found that Ms. Denman does not an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 34. Although Denman claimed she met or equaled certain listings during the administrative hearing and when requesting reconsideration of the ALJ's decision, her motion to remand makes no such claim.

**D. Step Four – RFC**

The fourth step requires an ALJ to determine whether a claimant has the RFC to perform his or her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). To answer this question, an ALJ must first determine a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is a function-by-function assessment of a claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996). In making this finding, an ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p, 61 Fed. Reg. 34488 (July 2, 1996); SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, an ALJ must make a finding on

the credibility of a claimant's statements based on a consideration of the entire case record. An ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 as well as SSR 96-2p, 61 Fed. Reg. 34489 (July 2, 1996); SSR 96-5p, 61 Fed. Reg. 34471 (July 2, 1996); and SSR 06-3p, 71 Fed. Reg. 45593 (Aug. 9, 2006).

The ALJ's decision analyzed and comprehensively summarized the entire record including Ms. Denman's testimony and reported allegations, lay opinions, the medical record, and the medical opinions in the record, and concluded that Denman had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). AR 35–49. He found that she could lift and carry no more than 10 pounds frequently, and 20 pounds occasionally; sit for 6 hours, cumulatively in an 8-hour work day. He also found that she could stand and/or walk for 6 hours, cumulatively in an 8-hour work day. However, she could not climb ladders, ropes, or scaffolds, and was precluded from crawling. She could occasionally climb stairs or ramps, balance, stoop, kneel and crouch. Due to bilateral tinnitus, Denman requires the ability to wear hearing protection when environmentally required to prevent further hearing damage. She could occasionally be exposed to temperature extremes and vibrations. Ms. Denman should have no exposure to hazards such as heights and dangerous moving machinery.

In arriving at his residual functional capacity, the ALJ considered all symptoms, and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529, SSR 96-4(p) and SSR 96-7(p). AR 35. Additionally, he considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSR 96-2(p), 96-6(p), and 06-3(p). *Id.* The ALJ found that Denman's medically determinable impairments could not reasonably be expected to produce the symptoms Denman alleged to the extreme degree she alleged them, and as a result, her statements concerning the intensity, persistence, and limiting effect of these symptoms were not substantially credible, in consideration of the record in its entirety. *Id.*

### E. Step Four – Ability to Perform PRW

Once the ALJ has determined a claimant's RFC as an initial consideration at step four, he or she utilizes the RFC assessment to determine whether a claimant can perform his or her PRW.

20 C.F.R. §§ 404.1520(f), 416.920(f).  PRW means work a claimant performed within the last 15 years, either as the claimant actually performed it or as it is generally performed in the national economy.  20 C.F.R. § 404.1560(b).  In addition, the work must have lasted long enough for a claimant to learn the job and to perform it as SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), 416.965.  If a claimant has the RFC to perform his or her past work, then an ALJ makes a finding that a claimant is not disabled.

The Department of Labor publishes the Dictionary of Occupational Titles (DOT), which provides "detailed physical requirements for a variety of jobs."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230 n.3 (9th Cir. 2009) (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1153 n.8 (9th Cir. 2007)).  The ALJ and/or a vocational expert utilizes the DOT in determining whether a claimant, given his/her RFC, can perform his/her PRW.  *Id.* (citing 20 C.F.R. § 404.1560(b)(2)).

After considering the entire record and summarizing Ms. Denman's testimony and reported allegations, lay opinions, the medical record, and the medical opinions in the record, the ALJ concluded that Denman was able to perform her past relevant work as a retail sales clerk, cashier, and hospitality supervisor as generally performed.  AR 49.  He found these jobs do not require the performance of work-related activities precluded by her residual functional capacity, pursuant to the vocational expert's testimony, and consistent with the Dictionary of Occupational Titles ("DOT") (4th Ed.).  20 C.F.R. § 404.1565.  He reviewed her work history report which indicated she worked as a casino players' club supervisor from April 2008, to November 2011; as a stocker from January to August 2007; a combined cashier/clerk/stocker from December 2006 to January 2007; a self-employed limousine driver from 1997 to 2005.  *Id.* at 50.

The vocational expert categorized Denman's PRW as:

1.　　hospitality supervisor – "light" skilled work with an SVP of 6 under the DOT;

2.　　retail sales clerk – "light" semi-skilled work with an SVP of 3 under the DOT, but "medium" as Denman performed the job;

3.　　discount variety stock clerk – "heavy" semi-skilled work with an SVP of 4, but "medium" as Denman performed the job according to her testimony;

4.　　cashier – "light" unskilled work with an SVP of 2, but "medium" as Denman

performed it according to her testimony; and

5.     limousine driver – "medium" semi-skilled work with an SVP of 3, and "medium" as Denman performed the job.

*Id.*

The ALJ compared Ms. Denman's RFC on a function-by-function basis with the demands of her past relevant "light" jobs as a hospitality supervisor, cashier, and retail sales clerk, as generally performed in the national economy by using the Dictionary of Occupational Titles and relying on the vocational expert's opinion. He found that an individual with a "light" level of work designation with the limitations articulated in this RFC assessment could perform these jobs as generally performed. Because Denman was able to perform her PRW there was no need to make the step five determination.

During the administrative hearing, Denman argued that she met or equaled medical listings 1.02A and/or 1.04 based on the opinion of a retained medical records reviewer, Dr. Burkett, who opined that she could not perform any SGA because of her MRI findings and daily use of morphine and hydrocodone. Counsel for Denman argued at the administrative hearing that "Dr. Burkett's evaluation … [is] more than adequate to base a decision that she meets or equals the medical listings indicated at Step-3 and satisfies a GRID." AR 66. He then states that testimony on her PRW was needed because "that's where the heart of the case is. If there's any way for them to deny benefits it's going to be a Step-4, but we don't think they understand what job she really did.…" *Id*. The ALJ considered Denman's PRW as she performed them, credited her testimony, and determined only that Denman could do her PRW as generally performed in the national economy, not as she actually performed her PRW.

The ALJ considered but gave little weight to Dr. Burkett's opinions that Denman met or equaled Listings 1.02A and 1.04 and could only lift up to five pounds and could only stand for up to one hour in an eight-hour day because of her spinal condition and joint dysfunction and reported symptoms. Again, Denman does not claim on appeal that she meets or equals Listings 1.02A and 1.04, or any other Listing.

/ / /

### III. THE PARTIES' POSITIONS ON APPEAL

#### A. Ms. Denman's Position

The sole issue on appeal is whether the ALJ committed reversible error in failing to properly assess Denman's credibility. Ms. Denman argues that the ALJ failed to articulate clear and convincing reasons for finding she was not credible. Denman claims that the ALJ did not specifically identify what testimony was not credible and what testimony undermined her complaints. In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation and intensity of any pain and aggravating factors. The ALJ may also consider the type, dosage, effectiveness, and adverse side-effects of any pain medication; treatment other than medication for relief of pain; functional restrictions, a claimant's daily activities; and ordinary techniques of credibility evaluation. However, an ALJ may not discredit a claimant's subjective testimony solely because it is not substantiated affirmatively by objective evidence.

Here, the ALJ found that Denman's impairments may reasonably be expected to cause occasional symptoms, but the intensity she alleged, and their impact on her functioning, were not supported by the totality of the evidence. Denman claims that the ALJ merely used oft rejected boilerplate language in reaching his determination, and his conclusory statement was wholly insufficient. Denman also claims the ALJ committed reversible error by rejecting her testimony because it lacks objective medical support. The mere assertion that a claimant's testimony is not credible because it is consistent with the objective medical evidence is always legally insufficient.

In this case, the ALJ conceded that the objective evidence could reasonably be expected to cause Ms. Denman's symptoms. Denman maintains the ALJ answered the wrong question in articulating the degree of limitation established by the objective medical evidence does not support the description and severity of her impairments. Denman claims "the true question is whether there is [*sic*] any clear and convincing reasons for rejecting Denman's testimony." Denman's severe impairments include fibromyalgia for which there is no known cure. The ALJ committed reversible error for rejecting Denman's testimony on the grounds she had only received conservative care. The ALJ cannot fault Denman for failing to pursue non-conservative treatment

options if none exist. Moreover, courts have held that injection therapy for pain and narcotic medications are not conservative treatments. Ms. Denman also claims that the ALJ is simply wrong in finding that no examining or treating physician has opined that Denman is disabled or unable to perform work activity.

The motion claims "a doctor who examined Ms. Denman twice did in fact opine that she was not able to work activity." Mot. at 12–13. The motion does not identify the doctor by name but cites, the October 13, 2014 opinion of Dr. Burkett based on his records review and review of the ALJ's decision. AR 490–94. Denman also argues the ALJ also improperly criticized Denman's "attempts to work in order to struggle not to be destitute." Denman's descriptions of her limitations demonstrate that she is incapable of maintaining substantial gainful work activity as a result of her severe impairments. Denman argues the ALJ erred in finding her activities of daily living belied her claims she was unable to work because testified that she is able to perform activities of daily living, but only for short periods of time before needing to rest.

Because the ALJ failed to articulate clear and convincing reasons for rejecting Ms. Denman's testimony, counsel argues that the court should apply the "*Smolen*" test and remand for payment of benefits. Alternatively, the court should reverse the decision of the Commissioner and remand for the correction of legal errors.

### B. The Commissioner's Cross-Motion

The Commissioner's Cross-Motion to Affirm points out that Ms. Denman stopped working on November 3, 2011, when her employer terminated her accusing her of taking something. The Commissioner argues that the ALJ properly assessed Denman's credibility and permissibly discounted her subjective complaints because the record did not support the extent of her allegations. The Commissioner claims the ALJ correctly found that Denman was not credible for multiple valid reasons. First, the ALJ found Denman had worked after the alleged onset of disability, earned in excess of substantial gainful activity, and admitted that she stopped working after her employer accused her of stealing. Second, the objective evidence did not support Denman's claims of disabling symptoms; rather, the record showed clinical findings inconsistent with her allegations. Third, Denman's medical providers recommended mostly routine and

conservative treatment. Denman did not seek formal mental health counseling or follow up with a recommended work up for tinnitus. Fourth, Denman's impairments were treated effectively with medication. Fifth, the ALJ correctly found that Denman's daily activities undermined her claims of disability, and one of her doctors noted that Denman was not working because her parents had cancer. Sixth, the medical opinions in the record contradicted Denman's allegations of disability.

The Commissioner acknowledges that the Ninth Circuit has employed a clear and convincing reason standard to review an ALJ's decision discrediting a claimant's allegations. However, the Commissioner maintains that the standard is inconsistent with the differential substantial evidence standard in the standard of review prescribed by Congress in 42 U.S.C. § 405(g). The Commissioner acknowledges that this court is bound to apply the Ninth's Circuit's clear and convincing reasons standard and maintains that the ALJ's reasons for discrediting Ms. Denman's credibility are adequate under any standard.

The Commissioner disputes that the ALJ used only "boilerplate language" in making his credibility findings. Rather, the ALJ properly found that Ms. Denman was working while claiming to be disabled. Citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009), the Commissioner argues that a claimant's ability to work after the alleged onset of disability suggests her later claims about the severity of these limitations were exaggerated. Denman admitted at the administrative hearing that she stopped working when her employer fired her for theft. A claimant's testimony that she left her job for reasons unrelated to her alleged disability is a valid basis upon which to base an adverse credibility determination. The ALJ points out that Ms. Denman initially testified that she quit when her medical condition worsened, but later admitted that she was fired because she was accused of theft.

Although a lack of objective medical evidence cannot be the sole basis for discounting subjective complaints, an ALJ may consider minimal objective evidence in making his findings. The ALJ noted that the record did not document any significant limitations associated with Denman's claims of migraines. The Commissioner cites numerous references in the medical record from Brian Le, D.O., Dr. Ricardo Linares, and Dr. Alafuro Oruene supporting the ALJ's findings. With respect to Denman's tinnitus, medical records at UMC noted it was "stable". The

ALJ found that Denman had no repeated manifestations of inflammatory arthritis which undercut her assertions of whole-body pain and joint pain. Dr. Le found that Denman did not have arthritis and that she denied any joint problem or abnormalities. The ALJ also cited medical records establishing multiple medical examinations by treating physicians, which revealed that Ms. Denman's muscle strength was full at 5/5.

The Commissioner also maintains that the ALJ correctly noted that Denman received routine and conservative treatment with physical therapy and medication refills for her allegedly disabling impairments. District court decisions within the Ninth Circuit have held that a single steroid injection for the claimant's pain otherwise treated with medication does not undermine the AJL's finding of conservative treatment. The Ninth Circuit has held that it is appropriate to infer that a claimant's pain was not as disabling as a claimant reported when aggressive treatment is not sought. Denman's doctors routinely refilled her medications and recommended that she follow up at monthly intervals. Her low level of treatment contradicted her claims concerning the severity of her pain. Moreover, her impairments were effectively treated with medication refills, which suggests that her impairments were not as severe as claimed.

The ALJ also properly found that Ms. Denman's daily activities undermined her claims of disability. Denman testified that in a typical day she performed household chores, showered, read, dusted, and laundered clothing. She drove several days per week, cooked, washed dishes, and took out the trash according to her adult function report. Denman testified that she lived with her disabled husband who had lost use of his right upper extremity. Her activities of daily living suggest she is quite functional. Medical records suggest she was assisting her parents who had been diagnosed with cancer.

The Commissioner argues the ALJ's findings were consistent with medical opinions of Dr. Cabaluna. The ALJ gave moderate weight to the opinions of Dr. Cabaluna and significant weight the opinions of the state agency doctors whose opinions were also consistent with the ALJ's RFC finding. Thus, the ALJ gave valid reasons for finding Denman was not entirely credible.

Finally, the Commissioner argues that if the court finds one or more reasons the ALJ gave for discrediting Ms. Denman was incorrect and amounts to reversible error, the appropriate remedy

is to remand for further proceedings rather than for an award of benefits because Denman has failed to show that she is disabled acceptable medical evidence.

## **ANALYSIS AND FINDINGS**

Ms. Denman was 57 years old when she filed for disability claiming she was unable to work because of pinched nerves in her neck, degenerative discs in her spine, arthritis of the back, depression, constant severe pain in the neck and back, numbness in the right arm, shooting pain in the arms, hands, and feet, migraines, and bone and joint paint. AR 217–24. At the time she applied for disability, she stated she was not working and indicated she had stopped working on November 3, 2011, "because of other reasons." Her application explains she was terminated, but the pain and numbness in her neck and arms was getting worse and almost unbearable which made it difficult to concentrate and work. AR 218.

At the administrative hearing, her counsel characterized this as "a very easy case to decide." AR 63. Counsel argued that Ms. Denman had spine problems of the lumbar, cervical and thoracic areas; migraine headaches; arthritis at all levels; and suffered from severe pain. *Id.* He argued she was on heavy narcotic medications and had pain in her arms, back, feet, joints, and hands, and occasional right-arm numbness, pain in both hands, a little bit worse sometimes on the right side. AR 63–64. Counsel asserted that she met or equaled the requirements of the medical Listing at 1.02A, major joint disease, and equaled Listing 1.04, severe spine problems. AR 64. Counsel also argued that she "GRIDs out" at her age under 201.06 as an unskilled worker at either the sedentary or less than sedentary or light level. *Id.* He asserted that at Step 4, less than sedentary, there were no available jobs she could do. *Id.* After the ALJ issued his adverse decision, Dr. Burkett also opined Denman met Listing 11.03 because of her migraines.

On appeal, Ms. Denman does not claim that she meets the criteria for any Listing. Rather, her sole claim on appeal is that the ALJ committed reversible error by not providing clear and convincing reasons for discrediting her testimony about the intensity, persistence, and limiting effects of her pain and other symptoms.

Reviewing the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the court finds the ALJ's decision is supported

by substantial evidence, and the ALJ did not commit reversible error. The ALJ gave clear and convincing reasons for discrediting Ms. Denman's testimony. The ALJ's findings that Denman suffered from mild limitations in concentration, persistence, and pace are well supported by the record. She scored a perfect score of 30/30 on the Mini-Mental State examination administered by Dr. Cabaluna. The ALJ's findings that Denman had never sought formal mental health counseling at any time is supported by the record. It is also supported by the opinions provided by state agency mental health providers, Dr. Toth and Dr. Pena, who assessed Denman's mental status and found that she had mild difficulties in maintaining concentration, persistence, or pace.

The ALJ found that Ms. Denman was not entirely credible because, at the administrative hearing, she initially claimed that she left her position and quit her job at the Cannery Casino because of back and shoulder pain, sitting at a computer a lot, and getting migraines from the computer. AR 77. Denman testified she looked for work at other casinos after leaving the Cannery Casino, but her pain got worse and she just could not do it. *Id.* She indicated she stopped looking six months or so after her employment with the Cannery Casinos ended. *Id.* However, when the ALJ pressed her why she left the Cannery job, pointing out that she put down on her application for disability benefits that she was terminated, Denman acknowledged that she was terminated. *Id.* She first stated that she was terminated because of "some differences that we had there." *Id.* When asked about those differences, she finally admitted she was accused "of taking something" but added, "I was getting ready to quit anyways." AR 77–78.

The summary of earnings, certified earnings records, and other earnings records in the record substantiate the ALJ's finding that Ms. Denman worked through the third quarter of 2012 after the alleged December 1, 2011 onset of disability, earning enough to qualify as substantial gainful activity. AR 202–16. The ALJ also correctly noted that Denman told one of her doctors she was not working because "parents have lung cancer." AR 453. This was during the initial visit with the UMC Lied Clinic to establish a primary care physician on May 29, 2012. These multiple and conflicting statements are clear and convincing reasons for discrediting her testimony she could not work because of her various impairments and their effects.

The ALJ's conclusion that Ms. Denman was not entirely credible about the severity and

limiting effects of her symptoms is amply supported by the medical record in its entirety. The ALJ reviewed and summarized the medical evidence in the record and pointed to specific evidence in the medical records supporting the factual foundations on which his conclusions were based. For example, he correctly found that Denman repeatedly reported to treating providers that she had Lupus although multiple laboratory tests from May 9, 2010, and later showed negative results for Lupus. *See, e.g.*, AR 369–72 (Quest Diagnostic Laboratory Results dated Sept. 15, 2010); AR 450–51 (Quest Diagnostic Laboratory Results dated March 19 and April 16, 2012). Ms. Denman ultimately acknowledged to Dr. Cabaluna during his April 16, 2012 consultative examination that she had tested negative for Lupus. AR 440–44.

The ALJ's findings that Denman's pain was adequately managed with medication is amply supported by the medical records of Dr. Le at Las Vegas Pain Clinic from January 6, 2011, through April 12, 2012, indicating that although Denman was experiencing neck and back pain "it gets better by taking medications." AR 373–438. At her first visit to establish primary care at UMC, her chief complaint was back and joint pain, more in the lower back and cervical area. AR 453. She reported the radiation pain on her upper extremity had resolved and was better but that she took pain medication "which helps the pain, but again it's still there every day." *Id*.

The ALJ also correctly found that there are no opinions from any treating or examining physician in the medical record indicating that Ms. Denman was disabled for a continuous 12-months or longer. Denman's motion argues that the ALJ is "simply wrong" in finding that no examining physician has opined she is disabled or unable to perform work activity. Counsel cites Dr. Burkette's October 13, 2014 report (AR 490–94) for this proposition. However, this report, which was prepared after the ALJ's adverse decision, and his earlier April 3, 2014 report (AR 190–92) do not indicate that Dr. Burkette examined Denman. Both reports state he was retained by counsel to conduct a records review and opine on the medical records he was provided as well as the ALJ's decision. AR 190 ("At your request, I have reviewed the above claimant's Social Security case file including all of the medical records containing approximately 327 pages total."); *see also* AR 490 ("At your request, I have re-reviewed the claimant's case including medical records and the current decision by the Administrative Law Judge who wrote a 22-page decision

denial for the claimant's claim. I also reviewed the file on my previous disability consultation."). The ALJ explained why he afforded little weight to Dr. Burkett's opinions.

The ALJ also correctly found that Dr. Le referred Denman to a follow up with Dr. Young or another rheumatologist for her reported history of lupus, but she did not follow up. The ALJ correctly found that Denman was given an ENT referral for tinnitus, but nothing in the record showed she followed up with this referral. The ALJ's finding that Ms. Denman was repeatedly instructed to start physical therapy to manage her pain but failed to do so, even though she was still working as a casino supervisor during a portion of the time, and even though she was able to receive care from UMC Lied Medical Clinic, is supported by the record. Dr. Le repeatedly recommended physical therapy, home exercises, and psychological therapy including an outpatient psychological evaluation biofeedback and relaxation therapy. However, there is no indication in the administrative record that she followed any of this advice.

Ms. Denman was physically evaluated by consultative examiner, Dr. Cabaluna, on April 16, 2012. He provided a medical source statement opining that Denman was able to perform at the light to medium level of exertion. However, the ALJ afforded only moderate weight to his opinion finding a reduction to a "light" level of exertion was warranted by the overall record. The ALJ afforded significant weight to the records review conducted by Drs. Toth and Pena. Dr. Toth concluded that Ms. Denman was functionally able to perform at the light level of exertion notwithstanding her impairments. Dr. Pena affirmed Dr. Toth's opinion upon reconsideration adding the additional limitation that she should avoid concentrated exposure to extreme cold.

The ALJ afforded significant weight to the opinions of psychological reviewer, Dr. Torigoe, Ph.D. in psychology, who stated there was no evidence of a severe mood or anxiety disorder, and Denman had no more than mild restrictions in activities of daily living, social functioning, and maintaining concentration, persistence, or pace. He also afforded significant weight to the opinion of Dr. Roldan, Ph.D. in psychology, who affirmed the non-severe opinions of Dr. Torigoe. The ALJ found that both doctors' opinions were aligned with the total lack of mental health treatment, the lack of any mental health admissions, the entirely normal findings on the Mini-Mental State examination administered by Dr. Cabaluna, and repeated notations of

normal affect, mood, recent memory, and social functioning in the medical records.

The ALJ's finding that the record did not contain any opinions from treating or examining physicians stating Denman was disabled for 12 months or longer by any of her conditions is supported by the record. Nothing in the administrative record establishes that any examining or treating physician has reported that Denman is disabled or unable to perform work activity since her alleged onset date of December 1, 2011. The ALJ's reasons for finding that Denman was not fully credible about the severity of her symptoms and the impact on her functioning are supported by clear and convincing reasons. Because the ALJ's adverse credibility determination is supported by specific, clear, and convincing reasons, the court must uphold it.

## CONCLUSION

Judicial review of a decision to deny disability benefits is limited to determining whether the decision is based on substantial evidence reviewing the administrative record as a whole. It is the ALJ's responsibility to make findings of fact, draw reasonable inferences from the record as a whole, and resolve conflicts in the evidence and differences of opinion. Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g).

For these reasons,

**IT IS ORDERED:**

1. The Clerk of Court shall SUBSTITUTE Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit.

2. Plaintiff Janet S. Denman's Motion to Reverse/Remand (ECF No. 24) is **DENIED**.

3. The Commissioner's Cross-Motion to Affirm (ECF No. 25) is **GRANTED.**

4. The Clerk of Court is instructed to enter judgment accordingly and close this case.

Dated this 29th day of March 2019.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

18